IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| PATRICK HORN, | § | |
| Petitioner, | § | |
| v. | § | Civil Action No. 1:03cv224 |
| DOUG DRETKE, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division, | §<br><br>§ | |
| Respondent. | | |

## MEMORANDUM OPINION

Petitioner Patrick Horn, an inmate in custody of the Federal Bureau of Prisons in Atlanta, Georgia, flied an application for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Horn challenged his death sentence imposed in the 241st Judicial District Court of Smith County, Texas, in cause No. 241-80362-97, styled *The State of Texas v. Patrick Horn*. For the reasons set forth below, the Court will deny Horn's application.

**Factual Background**

Horn was convicted of capital murder for killing Chad Choice in the course of kidnaping him. The eight-year old Choice was reported missing from his home in Tyler, Texas on October 13, 1991. Two days later, a ransom note was found at the business of Chad's uncle, who owed money to three Columbian drug dealers. In 1992, Horn was arrested pursuant to a warrant on an unrelated incident. Police found a .380 caliber semi-automatic handgun in his possession.

1

Horn's younger brother testified that in 1995, Horn, who was then in custody on state and federal car jacking charges, asked him to dig up bones from a hole near his house and send the skull to Chad's uncle and to send some other bones to him at the Smith County jail, in an attempt to suggest that both the victim's family and he (Horn) were being threatened by the drug dealers. A year later Horn, in an appearance before a federal magistrate judge, confessed that he was involved in the kidnaping and led authorities to Chad's grave. Investigators found remains of a young boy, along with several other items, including spent shell casings from a .380 caliber semiautomatic weapon. Horn told authorities that the kidnaping was an act of retaliation against the boy's uncle because of a money dispute with the drug dealers. Horn told investigators that he had stolen the keys to the boy's house and given them to one of the drug dealers, and he had ridden with them in a car to a remote location where another of the drug dealers had shot the boy, and that a couple of days later, two of the drug dealers showed up at his house and told him that they were going to bury the child's body in the back yard of Horn's house. Three different inmates who had spoken with Horn during his confinement, however, testified that Horn told them that he himself had killed the child.

**Procedural Background**

On March 31, 1997, Horn was indicted for capital murder in the 241st District Court of Smith County, Texas. On October 4, 1999, he was convicted and, after a punishment determination hearing, he was sentenced to death. On December 4, 2002, his conviction and sentence were affirmed by the Texas Court of Criminal Appeals in an unpublished opinion, *Horn v. State*, No. 73,684, and his application for a writ of *certiorari* was denied by the Supreme Court of the United States. *Horn v. Texas*, 124 S.Ct. 88 (2003). Horn also filed an application for post-conviction relief which was denied by the Texas Court of Criminal Appeals in an unpublished opinion. *Ex parte*

*Horn*, No. 54,489-01 (Tex. Crim. App. March 5, 2003). On October 6, 2004, Horn filed an application for *habeas corpus* in this Court. On June 27, 2005, the Court stayed his application and directed Horn to return to State Court to exhaust his juvenile ineligibility claim. On October 5, 2005, the Texas Court of Criminal Appeals granted relief to Horn on that claim. *Ex parte Horn*, No. 75,262 (Tex. Crim. App. October 5, 2005). This Court *sua sponte* lifts the stay it imposed and will now resolve Horn's federal application.

**Claims**

Horn raised three claims in his application:

1. His right to confront witnesses was denied by the state trial court's allowing one of the three inmate informants to testify via closed circuit television.

2. His statements to authorities should not have been admitted in his trial because they were not voluntarily given.

3. Because he was less than eighteen years old at the time he committed the offense, executing him would constitute cruel and unusual punishment.

**Standard of Review**

28 U.S.C. § 2254 (d) provides that relief in *habeas corpus* may not be granted with respect to any claim which was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was either (1) contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Pure questions of law and mixed questions of law and fact and reviewed under § 2254 (d)(1), while pure questions of fact are reviewed under § 2254 (d)(2). *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000), *cert. denied*, 532 U.S. 949 (2001).

28 U.S.C. §2254 (b) generally prohibits granting relief on claims not previously presented to the state courts. If an application contains any such claims, it will usually either be dismissed without prejudice, or stayed, so that the applicant can return to state court and present the unexhausted claims to the state court in a successive petition. *See Rose v. Lundy*, 455 U.S. 509, 520-22 (1982); *Rhines v. Weber*, ___ U.S. ___, ___, 125 S.Ct. 1528, 1534 (2005). If the federal court is convinced that the state court would refuse to hear a successive petition on procedural grounds, however, the federal court can treat the unexhausted claims as if they were already procedurally defaulted. *See Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). The Court will not review procedurally defaulted claims unless the applicant can establish either that he had good cause for failing to present his claims, and he would be prejudiced by not being given an opportunity to do so in the federal court, or that the Court's failing to address the claims would result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 749-750 (1991); *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).

**Analysis**

One of the inmates who testified that Horn admitted to killing the victim himself was John Birk.[1] Birk testified via a two-way closed-circuit television from Ohio, because he was terminally ill with cancer. Horn contends that this procedure denied him the constitutional right to confront the witness. This claim was denied on the merits by the state court, so the issue for the Court is whether the state court's adjudication of this claim is either contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

---

[1] Birk also testified that Horn told him that he killed the victim over "a drug deal gone bad."

4

The Supreme Court has held that "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). In *Coy*, the Court reversed the defendant's conviction for sexual assault after a 13-year-old alleged victim was permitted to testify out of sight of the defendant. *See id.* at 1022. The right to face-to-face confrontation is not absolute, however: in *Maryland v. Craig*, 497 U.S. 836 (1990), the Court held that one-way closed-circuit television testimony by a child witness in an abuse case may be permissible upon a case-specific finding of necessity. *See id.* at 857. The Supreme Court explained that "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Id.* at 845. The salutary effects of face-to-face confrontation include 1) the giving of testimony under oath; 2) the opportunity for cross-examination; 3) the ability of the fact-finder to observe demeanor evidence; and 4) the reduced risk that a witness will wrongfully implicate an innocent defendant when testifying in his presence. *See id.* at 845-46.

In *Coy*, neither the defendant nor the witness were able to observe the other. In *Craig*, the defendant was able to observe the witness, but the witness was not confronted with defendant's face (either live or via television monitor) during the witness' testimony. In the present case, however, because Birk testified via two-way closed circuit television, he and Horn were able to look at each other during his testimony, and the jury was able to observe Birk's demeanor as he testified.

Because the procedures in the present case came closer to providing a "face to face confrontation" than the procedures in either *Coy* or *Craig*, the Court cannot find that the state court's denial of Horn's Confrontation Clause claim was contrary to clearly established federal law, as

5

determined by the Supreme Court of the United States in those cases.[2]

Lower courts which have considered this specific issue have split on whether allowing a witness to testify via two-way closed circuit television violates the Confrontation Clause. *Compare United States v. Gigante*, 166 F.3d 75, 80 (2d Cir. 1998) (allowing televised testimony) *with United States v. Yates*, 391 F.3d 1182 (11th Cir. 2004), *vacated en banc*, 404 F.3d 1291 (11th Cir. Mar, 30, 2005) (prohibiting televised testimony). That this issue is close enough to cause such a split establishes that the state court's rejection of Horn's confrontation clause claim did not result from an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. The Court will deny Horn's first claim.

Horn's second claim is that his statements to authorities should not have been admitted in his trial because they were not voluntarily given. He contends that while facing state and federal charges from an unrelated incident that could have resulted in a death sentence, he agreed to testify against his co-defendant in that case, and to provide information about all other criminal activities he had been involved in, with the understanding that neither federal nor state authorities would seek the death penalty against him. Horn then argues that, after he told Smith County investigators about the Columbian drug dealers and about burying the child's body in his back yard, the Smith County District attorney nevertheless sought the death penalty against him for that crime. As his counsel said in his application, "Mr. Horn talked to save his life. The State of Texas then used that coerced statement to convict and sentence him to death."

---

[2] Horn also contended because Birk was in Ohio when he was sworn, he would not have been subject to prosecution for perjury in Texas if he disregarded his oath. From the Confrontation Clause standpoint, however, the relevant inquiry would seem to be whether Birk *believed* he was subject to prosecution for perjury at the time he testified. Of course, considering that Birk was terminally ill, it is unlikely that he feared a perjury conviction.

6

Horn relies on *United States v. Rogers,* 906 F.2d 189, 190 (5th Cir. 1990), for the proposition that a breach of a plea agreement not to prosecute renders a confession provided pursuant to a plea agreement inadmissible, if the agreement not to prosecute is breached. Indeed, simple fairness requires that a statement provided pursuant to a promise made by the prosecution should not be admitted against the defendant if the prosecution does not do what it promised to do. The present case is distinguishable from *Rogers,* however, because Horn never contends that the State of Texas promised not to prosecute him for any other crimes to which he confessed; he contends only that the State led him to believe that he would never face the death penalty. The proper remedy for Horn, assuming his claim is meritorious, would be vacating his death sentence, not his conviction. Because the Texas Court of Criminal Appeals vacated Horn's death sentence on October 5, 2005, this claim is moot.

Horn's third claim is that executing him would violate the Eighth Amendment's ban on cruel and unusual punishment, because he was under 18 at the time of the offense. Because the Court of Criminal Appeals vacated his death sentence, this claim is also moot.

Because the State court's rejection of Horn's first claim was not contrary to, or the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, and because Horn's second and third claims were rendered moot by the Texas Court of Criminal Appeals, the Court will deny Horn's application for a writ of *habeas corpus.*

So **ORDERED** and **SIGNED** this 8 day of **November, 2005.**

_____
Ron Clark, United States District Judge